# Exhibit 2

1215781-1

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

| | | |
|---|---|---|
| In re Application of Kingstown Partners Master Ltd | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| | ) | |
| *Defendant* | ) | |

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

To: MVB Management, LLC
200 Park Ave., 58th floor New York, NY 10166

*(Name of person to whom this subpoena is directed)*

☑ **Testimony:** YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

See Schedule B attached hereto

| Place: Olshan Frome Wolosky, LLP 1325 Avenue of the Americas New York, NY 10019 | Date and Time: 10/13/2021 9:00 am |
|---|---|

The deposition will be recorded by this method: Stenography and videography

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

Within 14 days from the court's order, you shall produce to the undersigned counsel, all documents and things that are responsive to the requests set forth in Schedule A hereto in accordance with the definitions and instructions therein.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 08/31/2021

CLERK OF COURT

OR

_____            /s/ Lori Marks-Esterman
*Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Kingstown Partners Master Ltd , who issues or requests this subpoena, are:

Lori Marks-Esterman of Olshan Frome Wolosky, LLP, 1325 Avenue of the Americas, New York, NY 10019
(212) 451-2300 lmarksesterman@olshanlaw.com; thawkins@olshanlaw.com; kklein@olshanlaw.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

# PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____
_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

**Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)**

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SCHEDULE A**

**Definitions**

As used herein, the terms identified below shall be defined as follows:

1. All definitions and rules of construction set forth in Local Civil Rule 26.3 of the Local Rules of the United States District Court for the South and Eastern Districts of New York are incorporated herein by reference.

2. The "Appraisal Proceeding" shall mean the appraisal proceeding pending before the Grand Court of the Cayman Islands with cause number FSD 184 of 2020 (RPJ).

3. "Blackstone" shall mean Blackstone Inc. and its directors, officers, agents (including but not limited to attorneys), employees, representatives, parents, subsidiaries, affiliates, members, partners, and any other person or entity purporting to act on behalf of any of the foregoing, including, but not limited to, Blackstone ISG-I Advisors L.L.C., Blackstone Tactical Opportunities Advisors L.L.C., CFS Holdings II (Cayman), L.P., CFS Holdings (Cayman), L.P., and GSO Capital Partners LP.

4. The "Company" shall mean FGL Holdings, and its directors, officers, agents (including but not limited to attorneys, accountants, investment and financial advisors, and bankers), employees, representatives, parents, subsidiaries, affiliates, predecessors, successors, and any other person or entity purporting to act on behalf of any of the foregoing.

5. "Board" shall mean the Company's board of directors and any individual or subgroup thereof, and any of its/their agents (including but not limited to attorneys, accountants, investment and financial advisors, and bankers).

6. "CC Capital" shall mean CC Capital Management LLC, CC Capital Partners, LLC, and their directors, officers, agents (including but not limited to attorneys), employees,

representatives, parents, subsidiaries, affiliates, members, partners, and any other person or entity purporting to act on behalf of any of the foregoing, including, but not limited to, Chinh E. Chu.

7. "CC Capital Fee" shall mean the $3.75 million fee paid to CC Capital Partners, LLC relating to its services relating to the Merger.

8. "FNF" shall mean Fidelity National Financial, Inc. and its directors, officers, agents (including but not limited to attorneys), employees, representatives, parents, subsidiaries, affiliates, members, partners, and any other person or entity purporting to act on behalf of any of the foregoing, including, but not limited to, William Foley.

9. "Go Shop" shall refer to the Company's authorization to solicit additional proposals for acquisition of the Company during the period from February 7, 2020 through March 18, 2020.

10. "Investment Management Agreements" shall mean the investment management agreement(s) pursuant to which Blackstone ISG-I Advisors L.L.C. provided investment management and/or advisory services to the Company and/or Board, any amendments thereto, and any side letters relating thereto, including any participation fee agreements or other arrangements relating to the sharing of, or onward payment of any, participation fees, investment management fees and/or proceeds relating to the same "Participation Fee Agreements."

11. "Merger" shall mean the June 1, 2020 transaction pursuant to which FNF acquired the Company.

12. "Merger Consideration" shall mean cash and/or FNF common stock that FGL's stockholders were entitled to receive upon consummation of the Merger and cancellation of FGL's publicly traded shares: either (i) $12.50 in cash or (ii) 0.2558 shares of FNF common stock, subject to the proration provisions in the Merger Agreement.

13.     "Proxy" shall mean the proxy statement relating to the Merger that was filed by the Company with the SEC on or about April 28, 2020.

14.     "Sub-Advisory Agreements" shall mean the agreement(s) pursuant to which MVB provided sub-advisory services to Blackstone ISG-I Advisors L.L.C, any amendments thereto, and any side letters relating thereto, including any Participation Fee Agreements.

15.     "Voting Agreements" shall mean all agreements with respect to any voting relating to the Merger including, but not limited to, the voting agreements described on pages 64-65 of the Proxy.

16.     "You" or "Your" shall mean MVB Management, LLC and its directors, officers, agents (including but not limited to attorneys), employees, representatives, parents, subsidiaries, affiliates, members, partners, and any other person or entity purporting to act on behalf of any of the foregoing, including, but not limited to, William Foley and Chinh E. Chu.

## Instructions

1.     These requests are intended to and do cover all documents in Your possession, custody, or control, or for which You have the practical ability to retrieve, including those documents in the possession, custody, or control of Your directors, officers, agents (including but not limited to attorneys), employees, representatives, parents, subsidiaries, affiliates, and any other person or entity purporting to act on behalf of any of the foregoing.

2.     These requests do not seek and specifically exclude documents that have been produced by the Company in the Appraisal Proceedings.

3.     Each request for a document contemplates production of the document or electronically stored information in its entirety, without abbreviation or expurgation.

4. Documents or electronically stored information provided shall be complete and, unless privileged, unredacted, submitted as found (*e.g.*, documents that in their original condition were stapled, clipped or otherwise fastened shall be produced in such form). To the extent any responsive document is attached to another document through manual or electronic (*e.g.*, e-mail) means, both the responsive document and any attachment(s) should be produced. To the extent only a portion of a document or electronically stored information is privileged, the non-privileged portion should be produced and any redactions should be clearly marked.

5. Electronically stored information ("ESI") should be produced in the following format: single page TIFFs, document level text files (text-searchable), native files with all metadata intact, .DAT with standard Concordance delimiters (should contain the path to native files and text files), OPT image load file (should contain the page count and volume path). Such ESI includes but is not limited to electronic mail, spreadsheets, documents created with word processing software such as Microsoft Word, pictures, audio and video recordings, and documents in Portable Document Format ("PDF").

6. These requests do not seek information protected by applicable privileges, including attorney-client privilege or work product privilege. Any document withheld from production based on a claim of privilege or any similar claim shall be identified in accordance with Rule 26(b)(5) of the Federal Rules of Civil Procedure and Local Civil Rule 26.2 of the Local Rules of the United States District Court for the South and Eastern Districts of New York.

7. Unless otherwise specified, each request pertains to the period of June 30, 2019, through April 27, 2020.

**Document Requests**

1. All documents and communications concerning the fair value of the Company and/or its stock, including but not limited to documents and communications concerning any valuation analysis or report, fairness opinion, discounted cash flow analysis, forecasts of the Company's future performance, or other documents concerning the value, market value, book value or fair value of the Company and/or its stock, and the assumptions underlying all analyses, opinions, reports, or projections concerning the Company.

2. All documents created, referenced, cited, reviewed, received, or relied upon by You in connection with any analysis, opinion, report, and/or projection concerning the fair value of the Company and/or its stock.

3. All documents and communications concerning the Merger Consideration.

4. All documents concerning the Merger.

5. All documents and communications concerning any agreement or potential agreement relating to or with the Company and/or the Merger, including any amendments thereto, including, but not limited to the Investment Management Agreements and the Sub-Advisory Agreements, and including but not limited to concerning the negotiation and execution thereof.

6. All documents and communications concerning any Voting Agreements, including, but not limited to, concerning the negotiation and execution thereof.

7. All documents and communications concerning the Investment Management Agreements and/or Sub-Advisory Agreements, including but not limited to all documents and communications concerning negotiation and execution thereof.

8. All documents and communications concerning CC Capital's interests, incentives and involvement in the Merger, including but not limited to the CC Capital Fee.

9. All documents and communications concerning Your interests and incentives with respect to the Merger, including but not limited to concerning any potential or actual conflicts of interest, both directly and through Your subsidiaries, affiliates, and/or related persons and/or entities.

10. All documents and communications exchanged between You and CC Capital, Blackstone, and/or FNF concerning the Merger, the Company, the Merger Consideration, the Voting Agreements, the CC Capital Fee, and/or the Go Shop.

11. All documents and communications concerning the Go Shop period, including but not limited to concerning any efforts to contact potential alternative bidders for the Company.

**SCHEDULE B**

**Deposition Topics**

The Definitions in Schedule A are incorporated herein by reference. You shall testify concerning:

1. All documents produced by You in response to this Subpoena and the method by which such documents were identified, collected, and reviewed for production.

2. The Merger, Merger Consideration, Voting Agreements, Investment Management Agreements, Sub-Advisory Agreements, CC Capital Fee, and Go Shop.

3. Your correspondence with Blackstone, CC Capital, and FNF relating to the Merger, Merger Consideration, Voting Agreements, Investment Management Agreements, Sub-Advisory Agreements, and Go Shop.

4. The value of the Company and/or its stock, and any valuations, analyses, reports, projections, and opinions relating thereto.

5. All agreements relating to the Company and/or Merger, including but not limited to the Investment Management Agreements, Sub-Advisory Agreements.

6. Your interests and incentives with respect to the Merger, including but not limited to concerning any potential or actual conflicts of interest, both directly and through Your subsidiaries, affiliates, and/or related persons and/or entities.