UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

IN RE: APPLICATION OF KINGSTOWN
PARTNERS MASTER LTD                          No. 21-MC-691-LTS

---------------------------------------------------------x

## Memorandum Order

Before the Court is the Petition of Kingstown Partners Master Ltd ("Kingstown"

or "Petitioner") seeking permission to conduct discovery, pursuant to 28 U.S.C. section 1782,

from respondents Blackstone Inc. ("Blackstone"), MVB Management, LLC ("MVB"), CC

Capital Management LLC ("CCCM"), and CC Capital Partners, LLC ("CCCP") (together,

"Respondents").  Respondents have opposed the Petition.  The Court has considered all of the

parties' submissions carefully, and for the following reasons, grants in part and denies in part the

Petition as set forth below.


## Background

This case arises out of an appraisal proceeding which is currently pending in the

Grand Court of the Cayman Islands, Financial Services Division, the purpose of which is to

determine the fair value of the shares of FGL Holdings ("FGL") as of May 29, 2020, the date

before FGL was merged into and became a subsidiary of Fidelity National Financial Inc.

("FNF") in an approximately $2.7 billion merger (the "Merger").  Kingstown is one of five

affiliated entities (together, the "Dissenters") who owned shares of FGL and invoked their

statutory right under Cayman law to dissent from the Merger and to have the fair value of their

shares determined in accordance with section 238 of the Cayman Islands Companies Act,

triggering the commencement of the appraisal proceedings (the "FGL Appraisal").

<u>Respondents</u>

Respondents are New York entities with connections to FGL, FNF, and/or the Merger. Blackstone, through certain subsidiaries and affiliates, "served as [FGL's] investment manager and collectively owned approximately 20.4% of FGL's stock prior to the Merger," as well as "all of [FGL's] Series A preferential shares" (docket entry no. 10 ("Dilliway-Parry Decl.") ¶ 7(a)); Blackstone also considered, or was approached about, a potential acquisition of FGL by Blackstone. (<u>Id.</u> ¶ 21.)[1] MVB served as a sub-advisor to a Blackstone entity and received fees through Blackstone's investment advisory agreements with FGL both before and after the Merger. (<u>Id.</u> ¶ 7(b).) CCCP "served as a 'transaction advisor' to FGL's Special Committee of the board of directors in relation to the Merger and received a $3.75 million fee for its services." (<u>Id.</u> ¶ 7(c).) CCCM was a shareholder of FGL, and CCCM's employees were "appointed by the FGL Special Committee to act as advisors to the FGL Special Committee and to assist the FGL Special Committee regarding its review of the proposal received by FNF as well as other potential strategic alternatives available to FGL." (<u>Id.</u> ¶ 7(d).)

A few individuals had connections to several of these entities. Chunh E. Chu, who had previously spent twenty-five years at Blackstone in senior leadership roles, served as Co-Executive Chairman of FGL since 2016, founded and controlled CCCP and CCCM, owned 50% of MVB, and held 6.7% of the ordinary shares of FGL prior to the Merger. (Dilliway-Parry Decl. ¶¶ 7, 13.) William Foley, who founded FNF and served as its Chairman or Executive Chairman since 1984, also served as Co-Executive Chairman of FGL and owned 50% of MVB, and (directly or through an entity controlled by him) also held 6.7% of FGL's ordinary shares

---

[1] The Court's references to "Blackstone" include subsidiaries and affiliates under its control.

prior to the Merger.  (Id. ¶¶ 7, 14.)  Mr. Foley, along with Richard Massey (who like Mr. Foley

sat on both FGL's and FNF's boards of directors), also directly participated in negotiations with

respect to the Merger.  (Id. ¶ 29.)

   Respondents or their affiliates also entered into voting agreements with FGL

and/or FNF pursuant to which they agreed to vote in favor of the Merger.  As summarized by

Kingstown's counsel, "[t]hese voting agreements, combined with the fact that Company

insiders—including Blackstone, CCCM, Mr. Chu, Mr. Foley, and [FGL's] other directors and

officers—together with FNF collectively controlled in excess of 40% of [FGL's] common

shares, made a vote in favor of the Merger by common shareholders highly likely," especially

given that Blackstone and FNF (as holders of certain preferred shares) each had "the ability to

block any alternative acquisition transaction."  (Dilliway-Parry Decl. ¶¶ 35, 36.)

The FGL Appraisal

   The Merger was agreed upon on February 7, 2020, and became effective on June

1, 2020; the FGL Appraisal proceedings commenced on August 17, 2020, before the Honorable

Justice Raj Parker.  In those proceedings, Justice Parker has issued two pretrial decisions of

particular relevance to the discovery application pending before this Court.

   First, on December 18, 2020, Justice Parker delivered a Judgment (docket entry

no. 40 ("Ferrone Decl.") Ex. 9 (the "Judgment")) concerning, among other things, the discovery

obligations of Kingstown and the other Dissenters.  Justice Parker explained that "dissenters are

not the main focus of the discovery exercise in [section] 238 cases as they will not hold the lion's

share of relevant material," although they must still "give discovery of documents that are

relevant to the exercise of determining [the] fair value [of their shares]."  (Judgment ¶ 46.)

Justice Parker concluded that the Dissenters were "not obliged to disclose documents relating to

their characteristics and their motivations, or the timing and amount of their investments,[ ]"

because "these matters are irrelevant to the determination of fair value[ ], which is the sole issue

before the court." (Id. ¶ 48 (footnotes omitted).) Justice Parker elaborated: "[D]ocuments that

are relevant only to the dissenters['] 'rationale' or their expectations are, as I have said, not

useful to the assessment of fair value," because they "do not assist the court in arriving at the fair

value determination. The particular motives or commercial positions taken by the dissenters or

other persons is not relevant." (Id. ¶ 61.) Justice Parker therefore denied FGL's efforts to seek

discovery about those motivations, unless such discovery was otherwise relevant to the fair value

of Dissenters' shares.

In another order dated December 18, 2020 (Dillway-Parry Decl. Ex. 4 (the

"Directions Order")), Justice Parker approved a much broader scope of discovery to be produced

by FGL. Justice Parker directed FGL to produce "all Documents in its possession, custody, or

power and which are relevant to the determination of the fair value of the shares in the Merged

Company," including, "without limitation, the categories of documents in Appendix 1." (Id. ¶

6(a).) Appendix 1 referenced, as relevant here:

> Communications and documents passing between the Merged Company
> and any third parties regarding a potential sale of the Merged Company,
> including but not limited to all documents and communications
> concerning solicitation of bids and/or negotiation of consideration for the
> Merged Company.
>
> Communications and documents in relation to the go shop process for the
> Merged Company.
>
> Communications and documents relating to Blackstone's (or its related
> entities or affiliates) interests and incentives in the mergers and any
> potential or actual conflicts of interest, both directly and through related or
> affiliated entities.
>
> Communications and documents relating to the interests and incentives of
> all directors and executive officers of the Merged Company and/or FNF

(including members of either of the Special Committees) in relation to the
mergers . . . and any potential or actual conflicts of interest, both directly
and through related or affiliated entities.

Communications and documents relating to the interests and incentives of
advisors appointed by either of the Special Committees and any potential
or actual conflicts of interest, both directly and through related or affiliated
entities.

Any communications and documents between the Merged Company and
its shareholders in relation to the merger transaction, including in relation
to the shareholders' interests and incentives, including, without limitation,
any communications in relation to the exercise of shareholders' voting
rights or voting agreements.

(Directions Order App'x 1 ¶¶ T, U, Z, AA, BB, GG (cleaned up).)  So far, FGL has produced at

least 228,974 documents responsive to the categories of documents the Cayman court deemed

relevant to its fair value determination.  (Ferrone Decl. Ex. 8.)  According to FGL's counsel,

99,684 of those documents (including their family members) discuss or were directed to or from

Blackstone (id.), 41,777 discussed or were directed to or from CCCM or CCCP, and 2,577

reference MVB.  (Docket entry no. 48 ("Weeks Decl.") Ex. 2.)

     The Directions Order also provided that applications (if any) for third party

discovery should "be made no later than 6 weeks prior to the [October 18, 2021] date of

exchange of expert reports"—i.e., September 6, 2021.  (Dilliway-Parry Decl. ¶¶ 50, 66, 72 &

Directions Order ¶ 19; see also Dilliway-Parry Decl. Ex. 5.)[2]

     On August 31, 2021, Kingstown filed this miscellaneous case seeking third party

discovery from Respondents.  At a high level, Kingstown seeks documents from between June

30, 2019, and April 27, 2020, concerning topics including the fair value of FGL and its shares,

agreements (such as investment management agreements and shareholder voting agreements)

---

[2]     The Directions Order initially set these deadlines as August 16, 2021, and September 27,
2021, respectively.  (Directions Order App'x 4 ¶¶ 11, 16.)

relating to FGL or the Merger, Respondents' interest, incentives, and involvement with respect to the Merger, any other potential bidders for FGL, and communications exchanged as to those topics.  (See docket entry no. 11 ("Marks-Eastman Decl.") Exs. 1-4 (the "Subpoenas").)[3]  The Subpoenas "do not seek . . . documents that have been produced" already by FGL in the FGL Appraisal.  (Id.)  In addition to its requests for the production of documents, Kingstown seeks to conduct a corporate deposition of each Respondent, as to essentially the same topics (as well as testimony concerning the documents produced by that respective Respondent).  (Id.)

As of the date of this Memorandum Order, the parties have submitted their respective expert and supplemental expert reports in the FGL Appraisal.  Trial is set to begin on May 23, 2022.  (Docket entry no. 56.)


DISCUSSION

Under 28 U.S.C. section 1782(a), "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal[.]"  28 U.S.C.A. § 1782(a) (Westlaw through P.L. 117-102).  "There are several statutory requirements that must be satisfied for § 1782 discovery assistance to be granted: (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person."  Fund for Prot. of Inv. Rts. in Foreign States, 5 F.4th 216, 223 (2d Cir. 2021) (citation omitted), cert. granted, 142 S. Ct. 638 (2021).

---

[3]     Kingstown also seeks from Blackstone documents and communications regarding Blackstone's potential acquisition or purchase of FGL.

Section 1782's "for use" requirement—the only statutory prerequisite as to which Respondents object in this case—is satisfied where "something [ ] will be employed with some advantage or serve some use in the proceeding[.]"  Mees v. Buiter, 793 F.3d 291, 298 (2d Cir. 2015).  "Whether discovery is 'for use in a foreign proceeding' is afforded broad interpretation." Deposit Ins. Agency v. Leontiev, No. 17-MC-414-GBD-SN, 2018 WL 3536083, at *3 (S.D.N.Y. July 23, 2018).  The central inquiry is "focused [ ] on the practical ability of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal."  In re Accent Delight Int'l Ltd., 869 F.3d 121, 131 (2d Cir. 2017).

"If the statutory preconditions are met, district courts exercise discretion to determine whether and to what extent the requested discovery should be permitted, guided by a set of factors outlined by the Supreme Court in" Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004) ("Intel").  In Re Guo, 965 F.3d 96, 102 (2d Cir. 2020), as amended (July 9, 2020).  The Intel factors to be considered are:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome."

Fund for Prot. of Inv. Rts. in Foreign States, 5 F.4th at 230 (citations omitted).

"Congress planned for district courts to exercise broad discretion over the issuance of discovery orders pursuant to § 1782(a)—both over whether to grant a discovery order and, if so, what limits to place on that discovery."  In re Edelman, 295 F.3d 171, 181 (2d Cir. 2002).  Courts exercise that discretion "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and

encouraging foreign countries by example to provide similar means of assistance to our courts."

Schmitz v. Bernstein Liebhard & Lifshitz, LLP., 376 F.3d 79, 84 (2d Cir. 2004) (citation and

internal quotation marks omitted).

      "The party seeking discovery need not establish that the information sought

would be discoverable under the foreign court's law or that the U.S. would permit the discovery

in an analogous domestic proceeding."  Matter of Makhpal Karibzhanova, No. 21-MC-442-KPF,

2021 WL 2435453, at *2 (S.D.N.Y. June 15, 2021).  The Court may consider, however, "the

familiar standards of Rule 26 of the Federal Rules of Civil Procedure," Mees, 793 F.3d at 302,

including that Rule's proportionality factors, which include "the importance of the issues at stake

in the action, the amount in controversy, the parties' relative access to relevant information, the

parties' resources, the importance of the discovery in resolving the issues, and whether the

burden or expense of the proposed discovery outweighs its likely benefit."  Matter of Degens,

No. 20-MC-237-JGK-RWL, 2020 WL 4252725, at *5 n.5 (S.D.N.Y. July 24, 2020) (quoting

Fed. R. Civ. P. 26(b)(1)).

      Respondents concede that Kingstown's application satisfies two of the three

statutory prerequisites to section 1782 discovery—since Respondents reside or are found in New

York, and Kingstown is a party with an interest in the FGL Appraisal—but dispute that

Kingstown's application seeks discovery "for use" in that appraisal proceeding.  Respondents

argue that the discovery sought is not "for use" in that proceeding because, although trial is

scheduled to begin on May 23, 2022, the deadline has already passed for the parties to submit

expert reports on issues of valuation—the "primary vehicle through which parties present

evidence to the Cayman Court."  (Docket entry no. 39 ("Blackstone Opp.") at 17 (emphasis

added).)  Moreover, Respondents argue, the discovery requested cannot be "for use" in the FGL

Appraisal, given that the sole issue before the Cayman Court is the determination of the fair

value of Dissenters' shares.  (Docket entry no. 46 at 17-18.)

        The Court concludes that Kingstown seeks discovery "for use" in the FGL

Appraisal.  The term "for use" is afforded "a broad interpretation," Leontiev, 2018 WL 3536083,

at *3, and that requirement may be satisfied so long as the materials sought are "to be used at

some stage of a foreign proceeding."  In re Accent Delight, 869 F.3d at 132 (quoting Mees, 793

F.3d at 301).  "[T]here is no statutory basis for" any requirement that the discovery sought be

actually admissible in the foreign proceeding.  Brandi-Dohrn v. IKB Deutsche Industriebank

AG, 673 F.3d 76, 82 (2d Cir. 2012).  Kingstown's proffered uses of the discovery sought here

"in connection with preparation for trial and/or as documentary submissions" (see docket entry

no. 49 ¶¶ 33-34)—uses Respondents do not contend are per se prohibited under Cayman law—

are therefore sufficient to satisfy section 1782's "for use" statutory threshold.  See Sampedro v.

Silver Point Cap., L.P., 818 F. App'x 14, 17 (2d Cir. 2020), as amended (June 5, 2020) (district

court did not abuse its discretion by finding that a petitioner sought discovery "for use" in a

foreign proceeding where the petitioner intended to use the discovery sought to "prepare

witnesses, craft questions, and present his case" in a foreign litigation); IPCom GMBH & Co.

KG v. Apple Inc., 61 F. Supp. 3d 919, 924 (N.D. Cal. 2014) (permitting discovery for use in a

German proceeding even where the German litigation was on appeal, despite the respondent's

argument that the "odds" that the German appeals court would reverse and consider the issue as

to which discovery was sought were "vanishingly small").[4]  Similarly, Respondents' objection as

---

[4]      The Court also acknowledges that Kingstown's motion for discovery in this case was
fully briefed and submitted approximately six weeks before the deadline for the parties'
submission of supplemental expert reports on valuation.  (See Dilliway-Parry Decl. Ex. 5
¶ 14.)  The Court declines to penalize Kingstown for delays associated with this Court's
consideration of Kingstown's application.

to the alleged overbreadth of the Subpoenas beyond the issue of fair value "speaks to the extent of the discovery that should be granted, not whether the statutory 'for use' requirement has been met."  In re Ord. Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding, No. 4:21-MC-00153-AGF, 2021 WL 1611673, at *2 (E.D. Mo. Apr. 26, 2021) (addressing section 1782 application seeking discovery for use in a Cayman appraisal).

      The statutory preconditions for Kingstown's discovery motion are therefore met. The Court now turns to its application of the discretionary Intel factors and concludes, for the reasons that follow, that those factors weigh in favor of granting Kingstown's motion, with certain limitations.

      The first Intel factor looks to whether "the person from whom discovery is sought is a participant in the foreign proceeding," since in those circumstances, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."  Intel, 542 U.S. at 264.  In this case, Respondents are not participants to the foreign proceeding, and this factor weighs in favor of granting Kingstown's application.

      The second Intel factor directs the Court to "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." Intel, 542 U.S. at 264.  Here, Respondents do not dispute that courts in the Cayman Islands are generally receptive to considering discovery sought and obtained in the United States through section 1782.  (See Blackstone Opp. at 16; see also Dillaway-Parry Decl. ¶¶ 61-66; docket entry no. 40-1 ("Lowe Decl.") ¶ 32.)  Accord In re Kuwait Ports Auth., No. 1:20-MC-00046-ALC, 2021 WL 5909999, at *10 (S.D.N.Y. Dec. 13, 2021) ("the weight of authority reflects that

Cayman courts are generally receptive to judicial assistance from federal courts"); <u>In re IJK Palm</u> <u>LLC</u>, No. 3:16-MC-171-RNC, 2019 WL 2191171, at *6 (D. Conn. Jan. 30, 2019) ("there appears to be no legal barrier to the use of the requested discovery in Cayman Island courts"); <u>In re Ord.</u> <u>Pursuant to 28 U.S.C. § 1782</u>, 2021 WL 1611673, at *3 ("There is no indication in the record here that a discovery order would be unwelcome by the Cayman Islands court.").  Instead, Respondents argue that this general receptivity has "no bearing" on "what is appropriate in this action" (Blackstone Opp. at 16), because "Justice Parker has made clear that this type of discovery is unwelcome and unnecessary, and he is not receptive to receiving or relying upon this type of information to support Petitioner's case."  (<u>Id.</u> at 17.)  However, most courts frame the second <u>Intel</u> factor's inquiry as focused on "the receptivity to 'U.S. federal-court judicial assistance'" "more generally," not whether the specific court would admit each specific piece of evidence sought, since such an analysis would involve domestic courts in narrow questions of foreign law better suited to their foreign counterparts.  <u>In re O'Keeffe</u>, 646 F. App'x 263, 267 (3d Cir. 2016) (quoting <u>Intel</u>, 542 U.S. at 264).  Even to the extent <u>Intel</u>'s second factor calls for a narrower inquiry, the Court concludes, as described below, that Respondents have not shown that Justice Parker is not "receptive" to much of the discovery sought by Kingstown.  Therefore, this factor too weighs in favor of granting Kingstown's discovery application in connection with the commercial dispute in the Cayman Islands.

The third <u>Intel</u> factor considers "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States[.]"  <u>Fund for Prot. of Inv. Rts. in Foreign States</u>, 5 F.4th at 230 (citing <u>Intel</u>, 542 U.S. at 265).  This factor does not require the Court to bar discovery on the ground that it may not be discoverable or ultimately admissible under the laws of a foreign jurisdiction, <u>id.</u> at

231-32, although the Court may consider whether "the foreign tribunal has already rejected requests for the same documents."  In re Ex Parte Application of Eni S.p.A., No. 20-MC-334-MN, 2021 WL 1063390, at *4 (D. Del. Mar. 19, 2021).  In the FGL Appraisal, Justice Parker issued discovery orders restricting the discovery to be produced by Kingstown and its fellow Dissenters about their "motives" and "rationale" (Judgment ¶¶ 48, 61), noting that those internal thoughts of "dissenters or other persons" are "not relevant" to the court's fair value determination.  (Id. ¶ 61.)  However, Justice Parker has also directed FGL to produce—as relevant to the "Deal Process Valuation"—"[c]ommunications and documents passing between the Merged Company and any third parties regarding a potential sale of the Merged Company," "[c]ommunications and documents relating to Blackstone's (or its related entities or affiliates) interests and incentives in the mergers and any potential or actual conflicts of interest, both directly and through related or affiliated entities," "[c]ommunications and documents relating to the interests and incentives of all directors and executive officers of the Merged Company and/or FNF . . . and any potential or actual conflicts of interest," and "communications in relation to the exercise of shareholders' voting rights or voting agreements."  (Directions Order App'x 1.)[5]  It therefore appears that Justice Parker considers these topics relevant to the fair value issue before him.  Moreover, Justice Parker authorized the parties to take third party discovery in this case.  (Directions Order ¶¶ 19-20.)  This Court therefore cannot say that Kingstown's attempt to obtain

---

[5]   The parties devote substantial briefing to an apparent tension between Justice Parker's reference to the irrelevance of the "motives" of "other persons" and Justice Parker's allowance of discovery into the "interests and incentives" of Blackstone, its affiliates, and FGL's directors and executive officers.  Especially given Respondents' "insider" roles in the underlying Merger, the "twin aims" of section 1782 will be best served by this Court permitting the requested discovery (as modified below) and allowing Justice Parker to resolve the questions of the admissibility, relevance, and proper weight of discovery into Respondents' interests and incentives in the Merger.

discovery about topics already deemed relevant to the FGL Appraisal, from Respondents (who

no doubt possess discovery as to those topics), circumvents any proof-gathering restriction of the

Cayman Islands.  See In re Kuwait Ports Auth., 2021 WL 5909999, at *10 ("the [Cayman court's

prior] ruling did not place any express restriction on the KPA obtaining the requested discovery

sought in this Application").  This factor also weighs in favor of granting Kingstown's discovery

application.

       The fourth Intel factor considers whether the discovery requested is "unduly

intrusive or burdensome," Fund for Prot. of Inv. Rts. in Foreign States, 5 F.4th at 230,

considering the "familiar standards" of Rule 26.  Id. at 232 n.70.  In light of the other Intel

factors, the Court has considered the substantial amount in controversy in the FGL Appraisal,

Respondents' access to information relevant to that proceeding, and the parties' resources, as

well as the parties' other proffers in this regard, and concludes that Kingstown's written

discovery requests, as narrowed through its counsel's proposed de-duplication procedures and

negotiations with counsel for CCCP, CCCM, and MVB (see docket entry nos. 53-2 & 53-3),

seek discovery relevant and proportional to the needs of the FGL Appraisal.[6]

       With the same considerations in mind, however, the Court concludes that

Kingstown has not shown that the incremental benefit of additional information which might be

---

[6]    The Court specifically authorizes discovery as requested in paragraph 1 of the October
22, 2021, email from attorney Kerrin T. Klein to attorney Mary Weeks.  The Court will
direct the parties to expeditiously meet and confer to resolve any outstanding disputes as
to appropriate search terms.  The Court also expects that, in light of this Memorandum
Order, counsel for Kingstown and Blackstone will expeditiously confer and formulate a
parallel agreement (with similar responsiveness restrictions, and a limited number of
email custodians) as the one formulated by counsel for Kingstown, CCCP, CCCM, and
MVB.  Finally, the Court concludes that Respondents' confidentiality concerns can be
adequately accommodated through the entry of a protective order in this case, and will
direct the parties to promptly confer and propose such an order to the Court.

elicited from corporate representative depositions of each Respondent outweighs the burden and expense of such potential depositions, given the focus of the FGL Appraisal on the fair value of FGL's shares at the time of the Merger and the lack of any request for deposition testimony from any particular deponent with personal knowledge of the topics at issue.  See In re Application of Quadre Invs., L.P., No. 18-MC-00118-ABG-JSX, 2019 WL 1075274, at *2 (C.D. Cal. Jan. 7, 2019) (denying motion for review of a magistrate judge's denial of a petitioner's request to take a corporate deposition, in connection with a Cayman appraisal proceeding, of the company which served as the financial advisor to the merging company's special committee negotiating the underlying transaction, in part due to petitioner's failure to show that the Cayman court was "at all likely to rely on" such deposition testimony); cf. In re Application of 000 Promneftstroy for an Ord. to Conduct Discovery for use in a Foreign Proceeding, 134 F. Supp. 3d 789, 790-94 (S.D.N.Y. 2015) (granting an application to depose an individual claimed to have "unique and direct personal knowledge" as to five subjects, some of which "the parties allied with" that individual "put in issue" in the foreign proceeding).  Especially in light of the quickly approaching trial date in the Cayman Islands, moreover, the parties' efforts will be most efficiently directed at the expeditious production and review of relevant and responsive documents and communications, rather than at the education and deposition of corporate representatives of Respondents who may not have any unique or personal knowledge of the Merger at issue in the FGL Appraisal.

    Having determined that Kingstown's discovery application should be granted in large part, the Court must address two remaining issues: whether Kingstown should bear any of the expenses of Respondents' production of discovery, and in what time frame Respondents should produce that discovery.

A district court may allocate the expenses associated with a non-party's response to a subpoena served pursuant to section 1782. "In evaluating the allocation of costs under Section 1782, the Court can look to cases considering similar issues under Fed. R. Civ. P. 45." In re T-Sys. Scheiz AG, No. 1:20-MC-308-GHW, 2020 WL 7384007, at *2 (S.D.N.Y. Dec. 16, 2020). Determining each party's share of the cost of compliance in such circumstances "turns on three factors: (1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear the costs; and (3) whether the litigation is of public importance." Id. (citing In re World Trade Ctr. Disaster Site Litig., No. 21-MC-100-AKH, 2010 WL 3582921, at *1 (S.D.N.Y. Sept. 14, 2010)). Here, Respondents had significant roles in the Merger underlying the FGL Appraisal, although there is no evidence that they have any direct financial interest in the outcome of that proceeding. All parties to this miscellaneous case—including Kingstown—are reportedly well capable of bearing the costs, and the FGL Appraisal is not of significant public importance. The Court therefore concludes that, on the particular facts of this case, an obligation on the part of Kingstown to bear one-half of each Respondent's costs incurred from this date forward will strike an appropriate balance between the liberal discovery frameworks of section 1782 and Rule 26 and the need to protect third parties from incurring undue burden and expense.

Finally, in light of the approaching May 23, 2022, trial date in the FGL Appraisal, the Court directs the parties to comply with the following schedule to effectuate a timely production of documents from Respondents to Kingstown. Kingstown and Blackstone are directed to promptly meet and confer in order to develop a framework for Blackstone's production of documents comparable to that developed by the other Respondents (at docket entry no. 53-2), and Kingstown is directed to meet and confer with all Respondents as to search terms

and any other remaining discrete issues.  By **April 18, 2022**, the parties shall file a joint status letter confirming that they have conducted the necessary meet and confer sessions, and submit a proposed confidentiality order for the Court's consideration.  Respondents shall begin producing documents responsive to Kingstown's discovery requests (as narrowed by Kingstown's agreements, see docket entry no. 53-2) by **April 25, 2022**, and shall complete those productions by **May 2, 2022**.

<u>Conclusion</u>

For the reasons set forth above, Kingstown's motion for discovery pursuant to 28 U.S.C. section 1782 is granted in part and denied in part.  Respondents are directed to respond to Kingstown's discovery requests on the schedule set forth above.  Kingstown shall bear one-half of the costs incurred by Respondents in responding to those discovery requests from this date forward.

This Memorandum Order resolves docket entry nos. 7 and 8.  The Clerk of Court is respectfully directed to terminate this miscellaneous case, over which the Court will retain jurisdiction for the purpose of enforcing the terms of this Memorandum Order.

SO ORDERED.

Dated: New York, New York
       April 8, 2022

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge