Troutman Pepper Hamilton Sanders LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308



troutman.com

---

**Mary M. Weeks**
D 404.885.3634
mary.weeks@troutman.com

August 5, 2022

**VIA CM/ECF**

Hon. Laura Taylor Swain
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Courtroom 17C
New York, New York 10007

Re:   *In re the Application of Kingstown Partners Master Ltd.* **(Case No.: 21-mc-691-LTS)**

Dear Judge Swain:

We represent CC Capital Management, LLC, CC Capital Partners, LLC, and MVB Management, LLC ("Respondents") in the above-referenced action. We write pursuant to this Court's July 28, 2022 Memo Endorsement to request the Court's assistance in ensuring Kingstown Partners Master LTD ("Petitioner") complies with the Court's Order dated April 8, 2022 ("April 8 Order"). In the April 8 Order, the Court determined that Petitioner must "bear one-half of the costs incurred by Respondents in responding to those discovery requests from this date forward." Dkt. No. 57 at 16. Thus, on July 11, 2022, Respondents provided Petitioner with information regarding fees they incurred in responding to Petitioner's discovery requests. *See* **Exhibit A**.[1]

Despite the Court's unambiguous April 8 Order, Petitioner now claims that it has no obligation to bear one-half of Respondents' fees because it decided to abruptly withdraw its subpoenas on April 18, 2022—a mere 7 days before the first production deadline. *See* **Exhibit B**. Petitioner was fully aware of the considerable time, effort, and money Respondents were spending responding to the subpoenas, including negotiating with Petitioner to narrow the scope of the subpoenas while simultaneously collecting and reviewing documents in order to timely comply with the April 8 Order. Simply put, the present dispute is a problem of Petitioner's own making.

Upon entry of the Court's Order on April 8, 2022, Respondents engaged in extensive discussions with Petitioner and Respondents' own personnel regarding custodians, categories of documents, search terms, and document locations—including email and non-email communications and documents. While Petitioner claims it now has no obligation to bear one-half

---

[1] Should the Court wish to review the underlying invoices, Respondents request they be permitted to provide them under seal or for *in camera* review to protect sensitive and privileged information.

**Hon. Laura Taylor Swain**
August 5, 2022
Page 2



---

of Respondents' costs, on April 11, 2022, the next business day following the Court's April 8 Order, Petitioner pressed for prompt responses to the subpoenas and requested Respondents' availability the following day to confer regarding the April 8 Order. *See* **Exhibit C**. Respondents responded promptly and, on April 13, 2022, the parties conferred. *Id.* The following day, Respondents provided a search term hit report for terms previously provided by Petitioner, which returned 16,558 documents. *Id.* Respondents also provided, at Petitioner's request, a cost estimate and planned protocol for document review and production, making clear that "given the tight deadlines imposed by the Court's Order and the fluidity of our discussions *in conjunction with the review being underway, as I mentioned on our call*, this process is subject to change . . . ." *Id.* (emphasis added). Such protocol was clear that Respondents anticipated needing several individuals, and expending significant time and money, to attempt to accomplish the production goals laid out by the April 8 Order combined with Petitioner's insistence on reviewing such a high volume of documents. *Id*. This was notwithstanding Respondents' efforts to ensure the protocol and ensuing review relied heavily on contract attorneys billing at a lower rate to maintain a reasonable fee structure. Due to these efforts, Respondents' resulting fees and costs were patently reasonable. Fed. R. Civ. P. 45(d).

At no time during the negotiation process did Petitioner request that Respondents postpone undertaking to review documents until the parties first agreed upon search terms. To the contrary, on April 16, 2022, Petitioner disagreed with Respondents' contention that completing a review of all 16,558 documents and production by the Court-ordered deadlines would be unmanageable. *Id.* The parties continued to negotiate and, on April 17, 2022, Respondents provided Petitioner with an updated search term hit report reflecting Petitioner's most recent proposal, which still returned over 16,000 documents—16,319 to be precise—in addition to 381 documents located on Respondents' Shared Drive. *Id.* Although Respondents expressed concern that this volume was still too large, they reiterated that, "as we've discussed, due to time restraints and in order to move toward a timely production, *we've had to move forward with starting our review and will continue to do so* pursuant to these results unless and until more limited search terms are provided." *Id.* (emphasis added). Again, with full knowledge that a massive effort was underway to timely comply with the April 8 Order, Petitioner did not request that Respondents postpone their document review and did not hint in any way that they intended to withdraw their subpoenas the very next day.

Despite Respondents' efforts to narrow the scope of the subpoenas, Petitioner continued to press Respondents to review and produce a significant volume of documents in a short period of time, forcing Respondents to simultaneously begin reviewing documents while still negotiating with Petitioner on a narrower scope. Petitioner was fully aware this process was ongoing, yet they continued to press for a significant document production. To be sure, it would have been virtually impossible for Respondents to comply with the Court's April 8 Order if Respondents had not swiftly assembled a team, apprised that team of the relevant facts and scope of the review, and immediately commenced review of the documents. Even so, Respondents *still* may not have been able to comply with the timeline provided by the April 8 Order due to the large volume of documents Petitioner insisted that Respondents review in such a short period of time. Nevertheless, Respondents expended considerable efforts endeavoring to review and produce documents in accordance with the quickly approaching deadlines.


Hon. Laura Taylor Swain
August 5, 2022
Page 3

---

Indeed, the April 8 Order directed Respondents to begin producing documents on April 25, 2022 and complete all productions by May 2, 2022, providing Respondents a mere 17 days to review potentially responsive, non-privileged documents and serve an initial production, and thereafter an additional 7 days to complete all productions. Dkt. No. 57 at 16. At the time of the April 8 Order, Respondents were grappling with a universe of 16,558 electronic documents and 381 Shared Drive documents to review and produce in this timeframe, and even after almost a week of meeting and conferring with Petitioner to reduce this volume, as of April 17, 2022, Petitioner's proposed search terms resulted in only about 200 fewer total documents to be reviewed.

On April 18, 2022, after Respondents had expended significant efforts to comply with the April 8 Order, Petitioner withdrew its subpoenas and went forward with trial in the Cayman Islands Appraisal Proceeding without any of the requested documents it originally claimed were critically important to its case and that time was of the essence in obtaining. *See* Dkt. 61 at 1 (confirming trial concluded on June 22, 2022 and Petitioner agreed to withdraw subpoenas). Now, in hindsight, Petitioner contends it should not be required to pay one-half of Respondents' fees associated with complying with the subpoenas because Petitioner did not ultimately receive any documents. But, again, the decision to move forward without the requested documents was made ***by Petitioner*** alone. Respondents could have, and would have, continued to review and produce documents in compliance with the April 8 Order, in which case Respondents' fees would have been some multiple of—and likely at least double—what already had been incurred as of April 18, 2022. Indeed, it appears that Petitioner weighed the costs and benefits associated with Respondents' review and determined that the need for the requested documents did not justify even one-half the cost of the document review and production required by the subpoenas. Petitioner's delayed realization does not negate Respondents' diligent and necessary efforts taken to comply with the April 8, 2022 Order up until that point. And, pursuant to that Order, Petitioner is now responsible for bearing "one-half of the costs incurred by Respondents" from April 8, 2022 through at least April 18, 2022 (when Petitioner withdrew its subpoenas), as demanded in Exhibit A.

Moreover, as Petitioner continues its refusal to comply with the April 8 Order and, in so doing, forces Respondents to incur additional attorneys' fees, Respondents request that the Court award to Respondents attorneys' fees and costs associated with needlessly litigating this present dispute as well. *See Valley Disposal, Inc. v. Cent. Vt. Solid Waste Mgmt. Dist.*, 71 F.3d 1053, 1060 (2d Cir. 1995) ("[U]nless there are reasons to the contrary, motion costs should be granted whenever underlying costs are allowed.").

We thank Your Honor for your attention to this matter.

Respectfully submitted,

*Mary M. Weeks*

Mary M. Weeks

cc: All counsel of record (via ECF)